In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Mark E. CONVERSE, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Mark E. CONVERSE,
Respondent-Appellant.

Supreme Court

*No. 2004AP2374–D. Submitted on briefs December 13, 2005.
—Decided January 12, 2006.*

2006 WI 4

(Also reported in 707 N.W.2d 530.)

For the respondent-appellant there was a brief by *Mark E. Converse* and *Mark E. Converse Law Offices,* Green Bay.

For the complainant-respondent there was a brief by *Richard P. Mozinski* and *Radosevich, Mozinski, Cashman & Olson, LLP,* Manitowoc.

¶ 1. PER CURIAM. Attorney Mark E. Converse has appealed from a referee's report concluding that he engaged in professional misconduct and recommending that his license to practice law in Wisconsin be suspended for a period of one year.

¶ 2. We conclude that the referee's findings of fact are supported by satisfactory and convincing evidence. We further determine that the seriousness of Attorney Converse's misconduct warrants the suspension of his license to practice law for a period of one year. We also agree with the referee that the costs of the proceeding, which are $4056.34, as of December 12, 2005, should be assessed against Attorney Converse.

¶ 3. Attorney Converse was admitted to practice law in Wisconsin in 1973 and practices in Green Bay. In 1985 he consented to the imposition of a public reprimand for neglect of a client matter and representation in a conflict of interest situation. In 1992 he was again publicly reprimanded for failing to diligently pursue a client's criminal appeal and failing to turn over the client's file to new counsel. He was also ordered to perform 200 hours of pro bono legal work. *See In re Disciplinary Proceedings Against Converse,* 168 Wis. 2d 8, 482 N.W.2d 911 (1992). In 1994 Attorney Converse's license was suspended for 60 days for failing to timely file federal and state income tax returns. *See In re*

*Disciplinary Proceedings Against Converse,* 185 Wis. 2d 373, 517 N.W.2d 191 (1994). In 2004 his license was suspended for 90 days for failing to act with reasonable diligence and promptness in representing a client; engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; failing to cooperate with the Office of Lawyer Regulation (OLR) in its investigation into grievances filed by his clients; and failing to reduce a contingent fee agreement to writing. *See In re Disciplinary Proceedings Against Converse,* 2004 WI 10, 268 Wis. 2d 562, 675 N.W.2d 238.

¶ 4. On September 9, 2004, the OLR filed a complaint alleging six counts of misconduct with respect to Attorney Converse's handling of two client matters. The first matter involved Attorney Converse's representation of R.K. and M.K. who had contracted to have renovations made to their home. A dispute arose between the K.s and the contractors regarding payment for the work performed and the quality of the work. The contractors sued the K.s for breach of contract. A different attorney represented the K.s through the first day of trial. The K.s then fired that attorney and retained Attorney Converse to represent them, agreeing to pay Attorney Converse $120 per hour, plus out-of-pocket costs. The K.s paid Attorney Converse an initial retainer fee of $2500. They were not asked to sign a fee agreement. At the conclusion of the trial on June 1, 2001, the court awarded judgment in favor of the contractors and against the K.s in the amount of $8104.52, plus 5 percent interest from July 5, 1999, to the date of judgment. The judgment was filed with the clerk of circuit court on June 29, 2001.

¶ 5. Immediately after the trial, the K.s told Attorney Converse they wanted to appeal, and Attorney Converse agreed to represent them. The K.s paid At-

torney Converse an additional $3500. Attorney Converse asserts this payment was for work done through the trial, while the K.s assert the money was a retainer to pursue the appeal.

¶ 6. Attorney Converse filed the notice of appeal on August 30, 2001, and filed the docketing statement on September 12, 2001. He met with the K.s on September 22, 2001, to discuss their appeal and requested an additional retainer fee. The K.s asked for an itemized statement of fees and costs through the trial. Attorney Converse never provided an itemized statement. On December 3, 2001, Attorney Converse filed a motion requesting additional time to file his appellate brief. The motion was granted and he was given until December 21, 2001, to file the brief. He never filed it.

¶ 7. On January 8, 2002, the court of appeals issued an order dismissing the appeal because no brief had been filed. Attorney Converse received notice of the dismissal on January 10, 2002. On February 15, 2002, the court of appeals entered a remittitur to the circuit court confirming the dismissal of the appeal. Attorney Converse did not tell the K.s about the dismissal and did not mail them copies of either court of appeals order.

¶ 8. The K.s telephoned Attorney Converse several times between September 2001 and February 2002 to discuss the status of their appeal and scheduled several meetings with Attorney Converse, all of which were cancelled. Although the K.s had more than ten contacts with Attorney Converse after January 8, 2002, Attorney Converse never told them the appeal had been dismissed or that he never filed an appellate brief. On February 7, 2002, Attorney Converse met with the K.s to discuss the appeal. Even though the appeal had already been dismissed, Attorney Converse told the K.s he was still working on the brief. He asked for addi-

tional money to pursue the appeal, but the K.s did not pay him any additional money and again asked for an itemized statement of fees and costs, which was never provided.

¶ 9. On April 18, 2002, the K.s sent Attorney Converse a certified letter expressing surprise that they had not received copies of the appellate brief. They requested copies of the brief and information about the status of the appeal. Attorney Converse failed to reply to the letter. On May 9, 2002, R.K. telephoned Attorney Converse and talked with him about the status of the appeal. Attorney Converse did not tell R.K. that the appeal had been dismissed and represented he was still working on the brief. On June 30, 2002, the K.s again wrote to Attorney Converse asking for information about the status of the appeal. Attorney Converse failed to reply.

¶ 10. On August 8, 2002, R.K. was at the Shawano County courthouse and learned from the clerk of court that the appeal had been dismissed. R.K. telephoned Attorney Converse and expressed outrage over the dismissal. Attorney Converse said he would get the appeal reopened or file a new action.

¶ 11. R.K. reported Attorney Converse's conduct to the OLR on May 21, 2003. On July 7, 2003, the OLR sent Attorney Converse a letter asking for a written response. Attorney Converse failed to respond. The OLR sent a second request, by both regular and certified mail, on August 7, 2003, informing Attorney Converse that his response must be postmarked by August 18, 2003. On August 18, Attorney Converse telephoned the OLR and said he would send a response the next day. He sent the response on August 22, 2003. In the

78

response, Attorney Converse admitted he had failed to complete the appeal and had failed to communicate with the K.s.

¶ 12. On August 27, 2003, the OLR sent Attorney Converse another letter asking him to provide additional information about the K. matter on or before September 10, 2003. On September 10, Attorney Converse telephoned the OLR and advised he would mail his response on September 15. The response was not sent. On September 30, 2003, the OLR sent Attorney Converse another letter, by both regular and certified mail, informing him that his response must be postmarked by October 10, 2003. Attorney Converse's employee signed the certified mail receipt on October 1, 2003, but Attorney Converse failed to reply. On October 22, 2003, Attorney Converse was personally served with a letter informing him that he had seven days to provide a written response to the OLR's request for additional information. Attorney Converse again failed to reply.

¶ 13. This court issued an order requiring Attorney Converse to show cause why his license should not be suspended for his failure to cooperate with the OLR's grievance investigation. Attorney Converse failed to file a response and on January 23, 2004, this court suspended his license. Attorney Converse finally sent a response to the OLR on January 27, 2004, and Attorney Converse's license was reinstated on January 30, 2004.

¶ 14. The second client matter detailed in the OLR's complaint involved Attorney Converse's representation of M.H., who was convicted of various criminal charges in 1985 and sentenced to 50 years in prison. M.H. appealed, but the appeal was dismissed. His post-conviction proceedings were reinstated in May 2000.

79

¶ 15. On September 21, 2000, the Brown County Circuit Court appointed Attorney Converse to represent M.H. in postconviction proceedings. M.H. wanted Attorney Converse to file a postconviction motion to modify his sentence. M.H., Attorney Converse and M.H.'s prior counsel exchanged correspondence from May to December 2000. M.H. sent Attorney Converse a summary of issues, a court decision and other information. On December 19, 2000, Attorney Converse wrote to M.H. and acknowledged receipt of the case file.

¶ 16. On February 22, 2001, Attorney Converse met with M.H. in prison. In May and June 2001 M.H. wrote to Attorney Converse inquiring about the status of the case. On June 19, 2001, Attorney Converse wrote to M.H. saying he would prepare a rough draft motion for M.H.'s review.

¶ 17. On July 19, 2001, M.H. wrote to Attorney Converse asking him to block M.H.'s transfer to an out-of-state prison so the postconviction proceedings would not be interrupted. Attorney Converse submitted a letter requesting a hold on M.H.'s transfer. On August 2, 2001, Attorney Converse wrote to M.H. informing him that the request to hold the transfer had been denied. On August 31, 2001, Attorney Converse wrote to M.H. inquiring about his placement status. During September 2001 Attorney Converse and M.H. exchanged correspondence in which M.H. gave Attorney Converse permission to discuss the case with his prior counsel and certain other persons.

¶ 18. On October 2, 2001, M.H. wrote to Attorney Converse enclosing a chronology of the postconviction case to date. M.H. said he was anxious to get the postconviction motion prepared and filed. He also told Attorney Converse he wanted to file a dual motion seeking both sentence modification and a new trial and

that he would waive the new trial request if the sentence modification was granted. M.H. offered to perform research and prepare motions and other documents.

¶ 19. On October 15, 2001, Attorney Converse wrote to M.H. accepting his offer of assistance. Attorney Converse asked M.H. to send him a copy of any affidavits he received and to keep in regular contact so Attorney Converse could keep the court informed about the case and obtain a hearing date as soon as possible after the notice, motions, affidavits and supporting briefs were completed.

¶ 20. From mid-October to the end of December 2001 M.H. and an inmate named Richards, who was apparently providing assistance to M.H. in the case, exchanged correspondence with Attorney Converse in which M.H. authorized Attorney Converse to discuss the case with Richards and in which M.H. and Richards asked Attorney Converse to send them a copy of the case file. On December 25, 2001, Richards wrote to Attorney Converse and acknowledged receipt of the file. Richards asked Attorney Converse to order transcripts and exhibits. Attorney Converse wrote to M.H. on January 14, 2002, describing the exhibits that had been ordered. On January 30, 2002, the court issued an order for a copy of transcripts.

¶ 21. On January 30, 2002, Attorney Converse wrote to M.H. saying Attorney Converse had picked up the certified transcripts and had sent the only copies of them to M.H. Attorney Converse wrote to M.H. in February and March 2002 regarding M.H.'s receipt of the transcripts. On March 17, 2002, Richards wrote to Attorney Converse saying Richards was being transferred to another institution and would no longer be daily involved in M.H.'s case. On March 22, 2002,

Attorney Converse wrote to M.H. acknowledging receipt of Richards's letter and expressing hope that Attorney Converse would be able to file the motion the next month. On March 25, 2002, Richards sent Attorney Converse and M.H. a draft motion and brief asking for a new trial or sentence modification, notes on transcripts and case law, and original affidavits and other documents. Richards told Attorney Converse he would still need to obtain testimony and statements, along with a supplemental pre-sentence investigation report.

¶ 22. On April 12, 2002, Attorney Converse wrote to M.H. and Richards acknowledging receipt of the documents Richards had sent. Attorney Converse said he would try to obtain any existing transcripts of the additional witnesses' testimony or would attempt to have them prepared. On May 17, 2002, Attorney Converse visited M.H. and picked up the transcripts. On May 20, 2002, Attorney Converse wrote to M.H. and returned two documents he had received from M.H. during their May 17 meeting. Attorney Converse said he would redraft an affidavit and send it to M.H. for his review and signing before a notary public. This letter was the last correspondence M.H. received from Attorney Converse.

¶ 23. On August 25, 2002, Richards wrote to Attorney Converse asking why he continued to delay in finishing and filing the documents. Richards said if the case did not begin to make some progress he would advise M.H. to contact the judge to make him aware of the delays. Attorney Converse never replied to Richards's letter. On October 3, 2002, M.H. wrote to the presiding judge concerning Attorney Converse's promises that he would soon be in a position to file a motion for sentence modification or postconviction relief, the

fact that no motion had been filed, and the fact that the last correspondence M.H. had received from Attorney Converse was dated May 20, 2002. M.H. requested the court's assistance in moving the case along.

¶ 24.　M.H. filed a grievance with the OLR complaining about Attorney Converse's lack of diligence in representing him. Attorney Converse submitted a written response to the grievance on July 8, 2003, admitting he had not had contact with M.H. since May 2002 and saying he was extremely sorry. On July 9, 2003, the OLR wrote to Attorney Converse asking him to describe in detail why he had not had any contact with M.H. since May 2002. On July 24, 2003, Attorney Converse submitted his response but failed to provide a detailed answer to the OLR's question. Attorney Converse offered to continue to serve as M.H.'s attorney if M.H. wanted him to do so but also said he would be willing to contact the court if M.H. wanted new counsel.

¶ 25.　Attorney Converse enclosed a copy of a letter from M.H. dated July 13, 2003, confirming M.H.'s desire to have Attorney Converse remain his counsel. M.H.'s letter said he had been transferred to Fox Lake Minimum Correctional Institution in April 2003 and that he had received work release privileges. M.H.'s letter also said he wanted Attorney Converse to proceed with the case since Attorney Converse was more familiar with it than a new attorney would be. In his letter to the OLR of July 24, 2003, Attorney Converse said he had completed a rough draft of the motion, would forward a copy of it to M.H. by July 29, would put it in final form and hoped to file it no later than August 10, 2003.

¶ 26.　On August 14, 2003, the OLR telephoned Attorney Converse to inquire about the status of the motion. Attorney Converse said the motion was 90 percent done but was not all typed yet. He said he would

send the motion to the OLR early the next week. On September 10, 2003, Attorney Converse telephoned the OLR and said the motion was not yet in final form but that he would send it shortly. When asked why it had taken a month to complete the motion, Attorney Converse said it was because of the volume of work he had to do.

¶ 27. On September 14, 2003, M.H. wrote to the OLR and said as of that date he had not received the motion or other documents Attorney Converse had promised to prepare. Attorney Converse never completed a postconviction motion to modify M.H.'s sentence, and the OLR never received any information to demonstrate that Attorney Converse sent a draft of the motion to M.H. On March 10, 2004, the circuit court appointed a different attorney to represent M.H.

¶ 28. John N. Schweitzer was appointed referee in the matter. A hearing was held on February 1, 2005. The referee issued his report on February 28, 2005. The referee concluded that by failing to file an appellate brief for the K.s after having been hired to do so, and by allowing the time for filing a brief to expire resulting in dismissal of the appeal, Attorney Converse violated SCR 20:1.3.[1] The referee also found that by failing to respond to the K.s' requests for information, failing to return telephone calls and respond to letters concerning the status of their appeal, failing to respond to the K.s' request for an itemized statement of fees and costs, and failing to inform the K.s that their appeal had been

---

[1] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

dismissed, Attorney Converse violated SCR 20:1.4(a).[2] The referee further found that by misrepresenting to the K.s that their appeal was still pending and that he was still working on the appellate brief when in fact he knew the appeal had already been dismissed, Attorney Converse violated SCR 20:8.4(c).[3] In addition, the referee found that by failing to timely respond to the OLR's request for a written response in a grievance investigation and by failing to timely respond to the OLR's request for additional information, Attorney Converse violated SCR 22.03(2) and (6)[4] and SCR 21.15(4).[5]

[2] SCR 20:1.4(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[3] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[4] SCR 22.03 provides in relevant part: Investigation.

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

. . . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[5] SCR 21.15(4) provides that "[e]very attorney shall cooperate with the office of lawyer regulation in the investigation,

■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■

¶ 29. With respect to the M.H. matter, the referee found that by failing to diligently complete and file a motion to modify M.H.'s sentence, Attorney Converse violated SCR 20:1.3. The referee also found that by failing to communicate with M.H. concerning his case from May 20, 2002, until approximately July 2003 Attorney Converse violated SCR 20:1.4(a).

¶ 30. In discussing the appropriate discipline to impose for this misconduct, the referee noted that Attorney Converse had been disciplined on four prior occasions. The referee also noted that counsel for the OLR enumerated a number of mitigating and aggravating factors present in the case. Aggravating factors included Attorney Converse's prior disciplinary offenses, a pattern of misconduct, intentionally failing to comply with rules or orders of the disciplinary agency, Attorney Converse's substantial experience as a legal practitioner, and harm to his clients. The referee noted the only mitigating factors identified by OLR counsel were the absence of a dishonest or selfish motive and Attorney Converse's remorse. The referee noted that the OLR's counsel said in his interactions with Attorney Converse he found Attorney Converse to be cooperative, decent, and a nice guy.

¶ 31. The referee noted that the OLR sought a one-year suspension of Attorney Converse's license, and he said that Attorney Converse offered no case law to rebut the OLR's position or to suggest that this court has departed from the general approach of progressive

prosecution and disposition of grievances, complaints filed with or by the director, and petitions for reinstatement. An attorney's wilful failure to cooperate with the office of lawyer regulation constitutes violation of the rules of professional conduct for attorneys."

discipline. Instead, Attorney Converse argued that the primary objective of discipline is deterrence and he asserted that the conduct that formed the basis for this action all took place prior to October 2003, which was when the hearing was held for the discipline imposed in early 2004. Attorney Converse argued that the salutary effect of the earlier disciplinary proceeding was sufficient to deter him from any further misconduct and that he is now able to better exercise judgment regarding the number and types of cases he will take on. In lieu of a suspension, Attorney Converse proposed a mentoring program whereby a reserve judge would serve as a mentor for him. He also said to address the problems he had with time management he could seek counseling and he suggested the local OLR board could monitor his compliance. He also offered to perform uncompensated community service for agencies such as Wisconsin Judicare or Legal Services of Northeastern Wisconsin.

¶ 32. The referee stated that in rebuttal to Attorney Converse's proposal the OLR pointed out that even though the violations in this case occurred before October 2003, some of them were committed after Attorney Converse had received notice he was being investigated by the OLR for very similar violations and even during October 2003 Attorney Converse failed to cooperate with the OLR in its investigation of these grievances.

¶ 33. The referee said that Attorney Converse had taken no steps to flesh out his proposal for mentoring or counseling. The referee specifically noted that community service and a public reprimand were used as an alternative to suspension in 1992 but those were insufficient to cause Attorney Converse to conform his practice to the rules of professional responsibility and

since that time Attorney Converse has caused additional harm to clients and the legal community. The referee concluded that a one-year suspension of Attorney Converse's license was reasonable and he also recommended that Attorney Converse pay the costs of the proceeding.

■

¶ 34. In his appeal, Attorney Converse does not contest the referee's findings of fact or conclusions of law with respect to the misconduct. The only issue he raises on appeal is the reasonableness of the one-year suspension. He notes that he was suspended from the practice of law for 90 days beginning March 31, 2004, and was reinstated effective July 1, 2004. He complains that after being back in practice for a little more than one month, he received a letter from counsel for the OLR saying that neither the charges to be brought, nor the sanction sought in this proceeding were subject to negotiation and informing him that the sanction sought by the OLR was a one-year suspension of his license. Attorney Converse argues that because he was serving a 90–day suspension at the same time the OLR made the determination to seek an additional one-year suspension, an additional suspension period is not appropriate.

¶ 35. The OLR argues that a one-year suspension is in fact appropriate. It says disciplinary sanctions for repeat attorney offenders are frequently predicated on offenses committed earlier in time than the most recent disciplinary action.

■

¶ 36. This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis.

2d 43, 675 N.W.2d 747. The court may also impose whatever sanction it sees fit regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686. The referee's findings of fact in this case have not been shown to be clearly erroneous, and we adopt them. We also agree with the referee's conclusions of law. We further agree with the referee's recommendation for a one-year suspension of Attorney Converse's license to practice law in Wisconsin and a requirement that Attorney Converse pay the costs of this proceeding.

¶ 37. Over the past 20 years Attorney Converse has repeatedly been found to have engaged in misconduct with respect to his handling of various client matters. This is the fifth time that he is the subject of a disciplinary action. As the referee noted, Wisconsin has long adhered to a system of progressive discipline. The fact that the frequency of Attorney Converse's misconduct has resulted in multiple disciplinary proceedings should not be a basis for imposing a more lenient level of discipline.

¶ 38. The misconduct at issue here was serious, and Attorney Converse offers no excuse for failing to diligently represent the K.s and M.H., or for failing to provide them with information about their cases in spite of their numerous requests that he do so. The fact that he now expresses remorse for his conduct rings hollow, especially in light of his previous disciplinary history. Under the circumstances it is reasonable to impose a one-year suspension of his license to practice law and to require him to pay the costs of the proceeding.

¶ 39. IT IS ORDERED that the license of Mark E. Converse to practice law in Wisconsin is suspended for one year, effective February 23, 2006.

¶ 40. IT IS FURTHER ORDERED that within 60 days of the date of this order, Mark E. Converse pay to the Office of Lawyer Regulation the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Mark E. Converse to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 41. IT IS FURTHER ORDERED that Mark E. Converse comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 42. N. PATRICK CROOKS, J., took no part.