# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP443-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Victor M. Arellano, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>      Complainant,<br>   v.<br>Victor M. Arellano,<br>      Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST ARELLANO

| | |
|---|---|
| OPINION FILED: | March 21, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | Abrahamson, C.J., Gableman, J., did not participate. |

| | |
|---|---|
| ATTORNEYS: | |

**2013 WI 24**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2011AP443-D

STATE OF WISCONSIN                    :        IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Victor M. Arellano, Attorney at Law:**

**Office of Lawyer Regulation,**

   **Complainant,**

 **v.**

**Victor M. Arellano,**

   **Respondent.**

**FILED**

**MAR 21, 2013**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding.   *Attorney publicly reprimanded.*

¶1    PER CURIAM.   Pending before the court is a report and recommendation filed by Referee John B. Murphy, recommending the court publicly reprimand Attorney Victor M. Arellano for two counts of professional misconduct.   No appeal has been filed so the court's review proceeds pursuant to SCR 22.17(2).[1]   Costs

_____

[1] SCR 22.17(2) states:

   If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or

totaling $40,960.49 as of August 6, 2012, are disputed.[2] We conclude that the referee's findings of fact are supported by satisfactory and convincing evidence and we adopt his conclusions of law. We agree that the appropriate discipline for Attorney Arellano's misconduct is a public reprimand. We further conclude that 25 percent of the costs of the proceeding should be assessed against Attorney Arellano.

¶2 Attorney Arellano was admitted to the practice of law in Wisconsin on September 27, 1985. He practices in Middleton, Wisconsin. He has one previous private reprimand dating from 2008.

¶3 On February 28, 2011, the OLR filed a complaint alleging 14 counts of misconduct based on events spanning from 1991 to 2007. The OLR initiated this proceeding after four female former clients filed grievances against Attorney Arellano, each alleging professional misconduct, including claims that Attorney Arellano engaged in improper sexual relations with them. The OLR sought revocation of Attorney Arellano's license.

¶4 Referee Murphy was appointed on April 18, 2011. Over the ensuing year, nine of the 14 counts were dismissed before

---

modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

[2] The Office of Lawyer Regulation (OLR) does not seek restitution and we accede to the OLR's judgment on this issue.

the evidentiary hearing.[3] In January 2012 the referee conducted a 2 1/2 day evidentiary proceeding on the remaining five counts of alleged misconduct.[4] The referee subsequently dismissed Count One in his report filed February 3, 2012, and on May 25, 2012, filed a report concluding that Attorney Arellano committed two counts of professional misconduct and dismissed two counts.[5] The parties filed briefs on the issue of sanctions, and on July 16, 2012, the referee filed his final order entitled "Recommendation as to Appropriate Discipline" recommending that Attorney Arellano be publicly reprimanded for his misconduct.

¶5 This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against

---

[3] Attorney Arellano filed a motion for partial summary judgment on August 26, 2011, seeking summary judgment on Counts One, Seven, Eleven, Twelve, Thirteen, and Fourteen. The OLR conceded it could not prove and dismissed Counts Thirteen and Fourteen. On November 15, 2011, the referee filed a decision reserving the issue regarding Count One, denying the motion regarding Counts Seven and Twelve, and granting to motion as to Count Eleven. On December 8, 2011, the parties filed a stipulation and order dismissing Counts Two, Three, Four, and Six of the complaint. This left seven counts.

[4] At the start of the evidentiary hearing on January 3, 2012, the referee granted the OLR's motion to dismiss Count Seven. On the third day of the hearing, the referee granted Attorney Arellano's unopposed motion to dismiss Count Twelve, leaving five counts outstanding.

[5] On February 3, 2012, following the evidentiary hearing, the referee filed a decision dismissing Count One of the complaint on statute of limitations grounds. On May 25, 2012, the referee filed a decision dismissing Counts Five and Ten of the complaint and concluding Attorney Arellano committed the misconduct alleged in Counts Eight and Nine of the complaint.

Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. Here, the OLR acceded to the dismissal of six counts (Counts Two, Three, Four, Six, Thirteen, and Fourteen) so we need not review these. They will be mentioned only for context.

N.S.M.: Counts One through Eight

¶6 The first eight counts of misconduct were filed in connection with the matter of N.S.M. With respect to the allegations involving N.S.M., the referee found that Attorney Arellano engaged only in the misconduct alleged in Count Eight; the OLR agreed to dismiss Counts Two, Three, Four, and Six. The referee recommended dismissal of Counts One, Five, and Seven.

¶7 The matter will be briefly summarized. On or about August 1, 1996, N.S.M. retained Attorney Arellano to represent her in a divorce. Attorney Arellano and N.S.M. quickly commenced a relationship and eventually lived together for several years. Their relationship ended, acrimoniously, in 2005.

¶8 Following the breakup, N.S.M. alleged that Attorney Arellano disparaged and defamed her in telephone calls to her father, e-mails to her sister and her cousin, in correspondence to some of her employers, and he reported to the sheriff that she had committed forgery.[6] N.S.M. also alleged that Attorney Arellano provided private information to her former husband in

---

[6] In July 2006 N.S.M. was charged with 16 criminal counts including forgery, writing bad checks, and failure to file tax returns. On June 11, 2007, she entered no contest pleas to a felony forgery charge and a misdemeanor charge of issuing a worthless check.

an effort to adversely affect her custody of the minor child from the marriage. Attorney Arellano, in turn, alleged that N.S.M. took large sums of money from him.

¶9 Count One of the OLR's complaint alleged that by commencing a sexual relationship with N.S.M. after she hired him to represent her in a divorce in August 1996, Attorney Arellano violated former SCR 20:1.8(k)(1) and (2), effective prior to July 1, 2007. The referee dismissed Count One as exceeding the permissible statute of limitations in an order filed February 3, 2012. The OLR does not appeal this ruling. We accept the referee's findings and conclusions on this charge.

¶10 Count Two alleged that by having at least 152 telephone conversations with N.S.M.'s former husband and/or her former husband's wife subsequent to Attorney Arellano's representation of N.S.M., when some of those conversations involved ongoing proceedings relating to a custody dispute, Attorney Arellano violated former SCR 20:1.9(b), effective prior to July 1, 2007, and current SCR 20:1.9(c).

¶11 On December 8, 2011, the OLR stipulated to the dismissal of Count Two, admitting it could not prove the information was "related" to Attorney Arellano's former representation of N.S.M.

¶12 Count Three of the complaint alleged that by providing N.S.M.'s former husband with a copy of at least one of N.S.M.'s bank statements, for the purpose of indicating that N.S.M. had filed a false financial disclosure statement in the post-divorce matters, Attorney Arellano violated former SCR 20:1.9(b). The

5

OLR stipulated to the dismissal of this count on December 8, 2011.

¶13 Count Four of the complaint alleged that by giving N.S.M.'s former husband a May 4, 2006 letter with enclosures, Attorney Arellano violated former SCR 20:1.9(b). The OLR stipulated to the dismissal of this count on December 8, 2011.

¶14 Count Five of the complaint alleged that by providing the guardian ad litem for N.S.M.'s minor child with 73 proposed requests to admit pertaining to N.S.M. for use in the post-divorce matters, Attorney Arellano violated former SCR 20:1.9(b).

¶15 The referee conducted a hearing on Count Five. After the hearing, the referee recommended dismissal of the count stating, "While [Attorney] Arellano's use of this information was clearly meant to harm [N.S.M.'s] chances in her custody dispute and was, therefore, inappropriate, mean spirited and childish, its use does not constitute a violation of the Rule." The OLR did not appeal this decision, and we accept the referee's findings and conclusions on this charge.

¶16 Count Six of the complaint alleged that by providing the Madison Police Department, through his attorney, a Confidential Financial Disclosure Statement and an affidavit with N.S.M.'s son's school progress report, both of which had been filed by N.S.M. in post-divorce matters in which Attorney Arellano had previously represented her, and by giving N.S.M.'s bank statements to the sheriff's department and police department, Attorney Arellano violated former SCR 20:1.9(b).

The OLR stipulated to the dismissal of this count on December 8, 2011.

¶17 Count Seven alleged that by sending a disparaging e-mail about N.S.M. to her sister and her cousin using his law firm's equipment and the services of his paralegal, by contacting N.S.M.'s employer to make negative allegations about her, by repeatedly contacting a co-worker of N.S.M.'s to disparage N.S.M., by delivering to the co-worker's home in a law firm envelope documents intended to disparage N.S.M., by making at least 186 telephone calls to N.S.M. in the course of one day, and by telephoning N.S.M.'s father in the middle of the night in August 2005 to insult N.S.M. in a crude and offensive manner, including describing sexual acts, Attorney Arellano violated SCR 40.15.

¶18 The referee granted the OLR's motion to dismiss this charge at the start of the evidentiary hearing on January 3, 2012.

¶19 Count Eight of the complaint alleged that by making misrepresentations to the OLR and to its District 9 Committee, or members thereof, in the course of the OLR's investigation of N.S.M.'s grievance, Attorney Arellano violated SCR 22.03(6)[7] via

---

[7] SCR 22.03(6) provides:

> In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

SCR 20:8.4(h).[8] The referee concluded that Attorney Arellano committed this misconduct.

¶20 The referee noted that obstructing the work of the District Committee by his misleading and false statements is a serious violation. The referee observed that the "ability of the Supreme Court to properly monitor and enforce the Rules of Professional Conduct through its investigative resources requires that attorneys under investigation be absolutely truthful in their response to inquiries." The referee observed that Attorney Arellano was an experienced attorney who had been previously investigated in another matter unrelated to this case. He knew the rules and his obligation to be truthful even when not under oath. In spite of this knowledge, Attorney Arellano chose to lie and to mislead the District Committee and, in doing so, he undermined the integrity of both the lawyer regulation system and the legal profession itself.

¶21 Thus, the referee found, and the record supports the finding, that Attorney Arellano was, for a time, N.S.M.'s lawyer and he and N.S.M. subsequently had an acrimonious break-up. The record discloses that both individuals engaged in behavior that was, to use the referee's words, "inappropriate, mean spirited and childish." Ultimately, there was insufficient evidence to substantiate the allegations in Counts One through Seven of the

---

[8] SCR 20:8.4(h) states it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

complaint. The referee concluded that Attorney Arellano committed the misconduct alleged in Count Eight by misleading the OLR and the District Committee about the nature of his representation of N.S.M. We accept these findings and conclusions.

M.F.: Counts Nine and Ten

¶22 On or about October 11, 2000, M.F. filed a Charge of Discrimination (Discrimination Charge) with the Equal Opportunity Employment Commission and the Equal Rights Division of the Wisconsin Department of Workforce Development against her former employer, the City of Milwaukee Mayor's Office (City). M.F. alleged that between 1995 and 2000, then-City of Milwaukee Mayor John Norquist unlawfully harassed M.F.

¶23 At or about the time M.F. filed the Discrimination Charge, Attorney Arellano initiated contact with M.F., calling her telephone number and leaving voicemail messages. Attorney Arellano solicited employment as her lawyer in the discrimination matter.

¶24 On or about October 23, 2000, M.F. retained Attorney Arellano and his then-firm, Lawton & Cates, S.C., to represent her in the Discrimination Charge against the City. The OLR alleged that following commencement of their attorney-client relationship, Attorney Arellano and M.F. commenced a sexual relationship.

¶25 Count Nine of the OLR's complaint alleged that Attorney Arellano violated former SCR 20:7.3(c),[9] by initiating contact with M.F. and making one or more unsolicited telephone calls to her for the purpose of inducing her to hire him to represent her in the Discrimination Charge against the City. Following the hearing, the referee concluded Attorney Arellano committed this misconduct.

¶26 The referee found that M.F. did not request the contact. The American Bar Association (ABA) Comment regarding SCR 20:7.3 in the Wisconsin Rules of Professional Conduct for Attorneys makes clear that the purpose of SCR 20:7.3 is to prevent a potential client from being pressured into entering into a representation agreement with an attorney. The Comment

---

[9] Former SCR 20:7.3(c), effective prior to July 1, 2007, provided:

> A lawyer shall not initiate personal contact, including telephone contact, with a prospective client for the purpose of obtaining professional employment except in the following circumstances and subject to the requirements of Rule 7.1 and paragraph (d):
>
> (1) If the prospective client is a close friend, relative or former client, or one whom the lawyer reasonably believes to be a client.
>
> (2) Under the auspices of a public or charitable legal services organization.
>
> (3) Under the auspices of a bona fide political, social, civic, fraternal, employee or trade organization whose purposes include but are not limited to providing or recommending legal services, if the legal services are related to the principal purposes of the organization.

cites the unequal nature of the relationship between the potential client and the lawyer as being fertile ground for the application of undue pressure upon the client.

¶27 The referee noted that while it is true that Attorney Arellano did contact M.F., the contact was by telephone and not in person. Moreover, Attorney Arellano told M.F. that if she wanted to discuss the case further, she must come to Madison from Milwaukee and meet at Attorney Arellano's law office. A number of days after the call, M.F. did go to Madison, did meet with Attorney Arellano, and did sign a retainer agreement. M.F. never claimed that she was pressured by Attorney Arellano to retain his legal services. Thus, the referee noted:

> The elements of undue pressure outlined in the Comment to Rule 20:7.3 do not seem to exist in the case. There is no question that the call occurred and that the Rule was violated. However, the violation seems more technical than substantive and therefore is not nearly as egregious an offense as it might have otherwise been.

We adopt the referee's findings and conclusion on this count.

¶28 Count Ten alleged that Attorney Arellano violated former SCR 20:1.8(k)(1) and (2) by commencing a sexual relationship with M.F. after she retained him as her lawyer. Attorney Arellano vehemently disputed this charge. M.F. testified in detail about the relationship. The parties litigated this issue extensively.

¶29 Following the hearing, the referee deemed M.F.'s version of events not credible. Extensive documentary evidence, including billing records submitted by Attorney Arellano,

11

persuaded the referee that it would have been logistically impossible for Attorney Arellano and M.F. to conduct the relationship in the manner described by M.F. Thus, the referee concluded that the OLR failed to provide clear, satisfactory, and convincing evidence sufficient to sustain this charge. We accept the referee's findings and conclusion in this matter.

¶30 The parties' litigation of Count Ten is relevant because Attorney Arellano argues, persuasively, that a significant percentage of the evidentiary hearing was dedicated to the OLR's unsuccessful attempt to prove this charge. Ultimately, the referee had to decide whether M.F. or Attorney Arellano was more credible with respect to whether Attorney Arellano engaged in an improper sexual relationship in violation of former SCR 20:1.8(k)(1) and (2). Attorney Arellano contends the fact he prevailed on this charge warrants a significant decrease in the costs imposed on him.

I.G.: Counts Eleven through Thirteen

¶31 I.G. is a native and citizen of Mexico. In the fall of 2005, I.G. and Attorney Arellano began dating. At the time, I.G. had two minor children with a former husband from whom she was divorced in 1999. Between 2002 and 2004, I.G. was married to a U.S. citizen.

¶32 When I.G. met Attorney Arellano, she was trying to obtain immigrant classification as the spouse of an abusive U.S. citizen so she could lawfully remain in the United States and be eligible for certain government benefits. Seeking this status required her to file an "I-360 Petition for Amerasian,

12

Widow(er), or Special Immigrant" (I-360 Petition) along with supporting documentation. She was working with another lawyer at this time.

¶33 In July 2006 I.G. became pregnant and told Attorney Arellano that he was the father of her unborn child.[10]

¶34 In late 2006 Attorney Arellano began to provide legal services to I.G., including assistance in preparing the I-360 Petition. Attorney Arellano did this work individually, not through his firm.

¶35 In March 2007 I.G. gave birth to N.G. In April 2007 Attorney Arellano executed the I-360 Petition as the person preparing the form for I.G. as the petitioner and identified himself as the company or organization filing the petition.

¶36 By letter dated April 20, 2007, and prepared by Attorney Arellano, I.G. signed and filed with the INS the I-360 Petition and supporting materials. The I-360 Petition required that the petitioner supply "Information about the spouse and children of the person this petition is for," that is, the spouse and children of I.G. In preparing the I-360 Petition, Attorney Arellano included information about I.G.'s two older children. None of the filed documents mention the baby, N.G.

¶37 Both I.G. and I.G.'s mother allegedly asked Attorney Arellano about the omission of any information about the expectant child on the I-360 Petition. Attorney Arellano

---

[10] Attorney Arellano was subsequently adjudicated the father of I.G.'s child, N.G.

allegedly stated he did not want to include information about the expectant child because he did not want the state coming after him for support, and they should just wait and he and I.G. would be married after the baby was born.

¶38 On September 24, 2007, without prior notice to I.G., Attorney Arellano withdrew as counsel for I.G. I.G. subsequently retained new counsel who notified the INS of the need to correct the omission in the I-360 Petition by disclosing N.G. as a child "of the person this petition is for."

¶39 Count Eleven of the OLR's complaint alleged that by representing I.G. with respect to her I-360 Petition which asked for information about I.G.'s children, when he knew at the time of the representation that he was the likely father of N.G., without obtaining I.G.'s written consent to the representation, Attorney Arellano violated former SCR 20:1.7(b), effective prior to July 1, 2007.

¶40 The referee granted Attorney Arellano's motion to dismiss this count on November 15, 2011. The OLR has not appealed this decision, and we accept the referee's findings and conclusions on this charge.

¶41 Count Twelve alleged that by advising I.G. not to identify N.G. on the I-360 Petition, by failing to include N.G.'s name on the I-360 Petition, by signing a statement declaring he prepared the petition and that it was based upon all information of which he had knowledge, by drafting for I.G.'s signature and notarizing her signature on an affidavit which did not mention N.G. and which inaccurately referred to

14

one of her other sons as her youngest son, and by filing the petition with the U.S. Citizenship and Immigration Services, Department of Homeland Security, Attorney Arellano violated SCR 20:1.2(d), SCR 20:8.4(c), and former SCR 20:3.3(a)(1).

¶42 The referee granted Attorney Arellano's unopposed motion to dismiss Count Twelve at the evidentiary hearing on January 5, 2012. The record indicates these charges were dismissed because I.G. failed to appear to testify. Consequently, the uncontroverted evidence from the hearing could not support the allegation that Attorney Arellano's nondisclosure was intentional. Attorney Arellano had testified that the omission of his child's name from the documents was an oversight. We accept the referee's findings and conclusion on this charge.

¶43 Count Thirteen of the complaint alleged that Attorney Arellano violated SCR 20:1.16(d) by unilaterally withdrawing from representing I.G. relative to the I-360 Petition without prior notice and/or allowing time for employment of substitute counsel. The OLR stipulated to the dismissal of this charge.

E.W.: Count Fourteen

¶44 In April 1991 E.W. hired Attorney Arellano to represent her in a divorce action. The complaint alleged that Attorney Arellano began a sexual relationship with E.W. that continued during his representation of her. Their relationship terminated in 1994.

¶45 By September 2007 Attorney Arellano had reason to believe that N.S.M., I.G., and/or M.F., or possibly another

15

woman, had filed or were likely to file grievances against him with the OLR.

¶46 On September 29, 2007, Attorney Arellano called E.W. and spoke with her for approximately 20 minutes. According to E.W., Attorney Arellano told E.W. that if she was called by any investigators, or by any of the women he had reason to believe had filed or may file grievances against him with the OLR, E.W. should not speak with them or she should hang up and let Attorney Arellano know that she had received such a call.

¶47 Thus, the OLR alleged that by calling E.W. on September 29, 2007, and telling her not to speak with any investigators, or to hang up if called, and not to speak with any of the women who he had reason to believe had filed or may file grievances against him with the OLR, Attorney Arellano violated SCR 21.15(4), SCR 22.03(6), SCR 20:8.4(h), SCR 20:8.4(a), and SCR 20:8.4(f). The OLR agreed to dismiss this count as part of the summary judgment decision filed November 15, 2011. Record evidence, including deposition testimony from E.W., indicated E.W. was persuaded to provide the OLR with untruthful information by some of the other grievants in this matter.

¶48 In sum, following extensive pre-hearing motions, decisions, and a lengthy evidentiary hearing, the referee filed a report on May 25, 2012. The referee ultimately concluded that the OLR had proven that Attorney Arellano violated SCR 22.03(6) via SCR 20:8:4(h) because he was both misleading and untruthful in his answers to the District Committee with regard to their

16

investigation of a grievance filed by N.S.M. (Count Eight). The referee also concluded that Attorney Arellano violated former SCR 20:7.3(c) by initiating contact with M.F. and making one or more unsolicited telephone calls to her for the purpose of inducing her to hire him to represent her in the Discrimination Charge against the City (Count Nine). The OLR did not succeed in proving any of the other 12 alleged counts of misconduct.

¶49 The referee then considered the appropriate discipline after receiving the parties' briefs on the issue of sanctions. The OLR had requested a public reprimand. Attorney Arellano maintained that a private reprimand is sufficient and seeks a significant, if not a total reduction in costs. The referee filed a report on July 16, 2012, entitled "Recommendation as to Appropriate Discipline." The referee said that taken alone, the violation of Count Eight would merit a private reprimand, and the violation of Count Nine would clearly merit a public reprimand. The referee recommended that when taken together, and considering the ABA Standards for Imposing Lawyer Sanctions, a public reprimand was appropriate.

¶50 As to the appropriate sanction, Wisconsin adheres to a system of progressive discipline. See In re Disciplinary Proceedings Against Converse, 2006 WI 4, ¶37, 287 Wis. 2d 72, 707 N.W.2d 530. Attorney Arellano has been the subject of a prior private reprimand. We agree with the referee that a public reprimand is an appropriate sanction for Attorney Arellano's misconduct.

17

¶51 We turn next to the issue of costs. Assessment of costs in OLR matters is governed by SCR 22.24. Our general policy is that upon a finding of misconduct it is appropriate to impose all costs, including the expenses of counsel for the office of lawyer regulation, upon the respondent. In cases involving extraordinary circumstances the court may, in the exercise of its discretion, reduce the amount of costs imposed upon a respondent. SCR 22.24(1m).

¶52 The OLR filed its statement of costs on August 6, 2012, listing $40,960.49 in costs. The OLR concedes that there are extraordinary circumstances present that justify reducing the amount of costs imposed on Attorney Arellano, in part because OLR voluntarily dismissed six of the 14 alleged counts of misconduct prior to the evidentiary hearing. The OLR thus recommends this court impose on Attorney Arellano half of the costs, or $20,480.25, explaining that most of the OLR's trial time was spent on claims on which the OLR did prevail.

¶53 Attorney Arellano filed a timely objection, asking the court to impose no costs at all, and asserting, in the alternative, that imposition of no more than 10 percent of the costs is warranted.

¶54 In exercising our discretion regarding the assessment of costs, we consider the submissions of the parties and all of the following factors:

> (a) The number of counts charged, contested, and proven.

> (b) The nature of the misconduct.

18

(c) The level of discipline sought by the parties and recommended by the referee.

(d) The respondent's cooperation with the disciplinary process.

(e) Prior discipline, if any.

(f) Other relevant circumstances.

See SCR 22.24(1m).

¶55 Applying these factors, we observe that SCRs 22.24(1m)(a)-(c) are relevant here. The complaint alleged 14 counts of misconduct and sought revocation of Attorney Arellano's license to practice law. The referee ultimately concluded, and we agree, that Attorney Arellano committed two counts of misconduct, warranting a public reprimand. Without minimizing the seriousness of Attorney Arellano's professional misconduct, it was far less serious and of a significantly different nature than originally alleged.

¶56 As the litigation proceeded, one witness changed her story and conveyed exculpatory evidence to the OLR's retained counsel that had not been disclosed to the OLR during its investigation. The OLR promptly disclosed these developments to respondent's counsel resulting in the dismissal of six of the 14 counts. Two counts were dismissed at trial when one of the grievants did not appear in person and the referee concluded telephonic testimony should not be permitted. Under these rather extraordinary circumstances, we agree that a reduction in costs is warranted in part because of the disparity between the allegations and recommended discipline in the complaint and the ultimate conclusions of this court.

19

¶57 That said, we reject Attorney Arellano's assertion that we should assess no costs at all. We are not persuaded that the counts on which Attorney Arellano prevailed were wholly without prosecutorial merit or that the OLR's costs pursuing those charges were unreasonable or unnecessary. The OLR was confronted with four separate grievants who each alleged Attorney Arellano engaged in extremely serious misconduct. The only evidence given for the charge of over-litigating is that the OLR did not prevail on all counts, in part because one grievant essentially recanted and another refused to appear.

¶58 Attorney Arellano litigated this case vigorously as is his right. He cannot, however, be deemed wholly cooperative with the disciplinary process given our determination that he violated SCR 22.03(6) via SCR 20:8.4(h) by making misrepresentations to the OLR and to its District 9 Committee or members thereof in the course of the OLR's investigation of the N.S.M. grievance, a matter comprising more than half of the alleged counts of misconduct. See SCR 22.24(1m)(d). Attorney Arellano has also been disciplined before. See SCR 22.24(1m)(e). These factors weigh against a reduction in costs.

¶59 On balance, we deem it appropriate to impose 25 percent of the costs on Attorney Arellano, or $10,240.13. Our determination is not the result of the application of a precise mathematical formula, but is based on our thorough consideration of the record, the manner in which this case developed, the OLR's acknowledgement that extraordinary circumstances justify a

20

reduction in costs, and the factors established in SCR 22.24(1m).

¶60  IT IS ORDERED that Victor M. Arellano is publicly reprimanded for professional misconduct.

¶61  IT IS FURTHER ORDERED that within 60 days of the date of this order, Victor M. Arellano shall pay to the Office of Lawyer Regulation the imposed costs of this proceeding.

¶62  IT IS FURTHER ORDERED that the director of the Office of Lawyer Regulation shall advise the court if there has not been full compliance with all conditions of this order.

¶63  SHIRLEY S. ABRAHAMSON, C.J., and MICHAEL J. GABLEMAN, J., did not participate.