In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Terry L. NUSSBERGER, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Terry L. NUSSBERGER, Respondent-Appellant.

Supreme Court

*No. 2004AP2996–D. Oral argument April 28, 2006.
—Decided August 8, 2006.*

2006 WI 111

(Also reported in 719 N.W.2d 501.)

For the respondent-appellant there were briefs by *Stephen D. Willett* and *Stephen D. Willett SC,* Phillips, and oral argument by *Stephen D. Willett.*

For the complainant-respondent there was a brief by *William J. Weigel* and the *Office of Lawyer Regulation,* Madison, and oral argument by *William J. Weigel.*

¶ 1. PER CURIAM. Attorney Terry L. Nussberger has appealed from the recommendation of the referee,

based upon the parties' stipulation both to the underlying facts and to the legal conclusion of a violation of SCR 20:1.2(d),[1] that Attorney Nussberger's license to practice law in this state be suspended for a period of 60 days. He has also objected to the statement of costs submitted by the Office of Lawyer Regulation (OLR) as being unreasonable and excessive.

¶ 2. Based upon our independent review of the record, including the parties' stipulation, we adopt the referee's findings of fact and conclusions of law. We also agree with the referee's recommendation that a 60–day suspension of Attorney Nussberger's license to practice law in Wisconsin is appropriate discipline, especially in light of Attorney Nussberger's prior discipline. Finally, we reject Attorney Nussberger's objection to the OLR's statement of costs and decide that Attorney Nussberger should pay the full costs of this proceeding, which total $6056.62 as of May 11, 2006.

¶ 3. Attorney Nussberger was admitted to practice law in Wisconsin in 1983. He operates a solo, general practice in Ladysmith, and handles various types of cases from the surrounding counties. He has also served as a family court commissioner for a number of years.

¶ 4. On March 29, 2003, Attorney Nussberger was publicly reprimanded with his consent in connection with two grievance investigations. In both instances, Attorney Nussberger admitted violating SCR 20:8.4(c)

---

[1] SCR 20:1.2(d) provides: Scope of representation.

(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

by submitting false disposition summaries and payment vouchers to the Office of the State Public Defender (SPD). Pursuant to SPD rules, appointed attorneys may not submit a disposition summary and payment voucher until the case has in fact reached disposition and counsel has completed the representation at that court level. Despite having been explicitly warned about submitting these documents prematurely, for at least 12 postconviction/appellate cases in which he filed no-merit reports in the court of appeals, Attorney Nussberger submitted payment vouchers before the court of appeals took action on the no-merit report and relieved him of further representation of the defendant. Thus, Attorney Nussberger obtained payment before he was authorized to do so under SPD rules by misrepresenting that the representation at the court of appeals level was complete.

¶ 5. Moreover, the disposition summaries submitted by Attorney Nussberger also indicated that he had advised the client of the right to file a petition for review in this court. This was false because the court of appeals had not yet acted on the no-merit report. Thus, Attorney Nussberger could not have explained the effect of the court of appeals' decision and the defendant's options in light of that decision because there was no such decision at the time. For the conduct alleged and admitted on both of the grievances, Attorney Nussberger was publicly reprimanded for his violations of SCR 20:8.4(c).

¶ 6. In the present case, on November 16, 2004, the OLR filed a complaint alleging one count of violating SCR 20:1.2(d) due to Attorney Nussberger's suggestion to a client that they could obtain additional funds from the estate for which she was personal representative by Attorney Nussberger misrepresenting the

50

amount of his fees incurred on her behalf. Reserve Judge Timothy L. Vocke was appointed as referee.

¶ 7. Attorney Nussberger initially filed an answer that admitted some factual allegations, but denied violating SCR 20:1.2(d). Prior to the hearing before the referee, he subsequently withdrew the answer, and filed a stipulation and no-contest plea, in which he agreed that the referee could use the factual allegations of the complaint as the factual basis for a determination of misconduct, as alleged in the single count in the complaint.

¶ 8. Attorney Nussberger did not stipulate, however, to the level of discipline. Consequently, Referee Vocke held a hearing as to the appropriate level of discipline. In addition to testimony from Attorney Nussberger and the client, the referee also heard and considered character testimony from three witnesses. The referee issued his report and recommendation on October 5, 2005.

¶ 9. Pursuant to the allegations of the complaint, as stipulated by Attorney Nussberger, the referee made the following findings of fact. L.R. was the personal representative for the estate of her mother. L.R. retained Attorney Nussberger to handle the probate of the mother's estate.

¶ 10. Prior to the mother's death, she had filed for bankruptcy. The primary asset that remained was the estate's homestead exemption in the mother's home. With the exception of some money that was to be paid to L.R.'s brother, the estate's assets were required to be turned over to the state of Wisconsin to repay the governmental assistance that the mother had received during her lifetime. The mother's house was sold in December 2002.

¶ 11. Around the time of the sale of the house, L.R. met with Attorney Nussberger regarding the estate. At that meeting, Attorney Nussberger told L.R. that it was unfortunate that she would not be receiving any funds from the estate, other than the 2 percent allowed to her as the personal representative's fee. L.R. asked about billing the estate for work that her husband had done to care for her mother's house while it was waiting to be sold. Attorney Nussberger responded that she could not receive any additional payment beyond the personal representative's fee. Attorney Nussberger suggested to L.R., however, that he could submit a billing statement regarding the estate that was higher than the amount of his fees he had actually earned and then split the extra money with L.R.

¶ 12. L.R. was troubled with Attorney Nussberger's suggestion and contacted the Ladysmith Police Department. The police arranged for L.R. to wear an electronic recording device at her next meeting with Attorney Nussberger on January 31, 2003.

¶ 13. According to the transcript of the audiotape of the meeting, which was entered into evidence without objection, after some initial discussion Attorney Nussberger raised the possibility of "trying to get a little bit extra." He explained that, hypothetically, if the actual fee might be $1500, he could submit a bill for $2500, which he didn't think would raise any flags with the people reviewing the invoice. After further discussion, Attorney Nussberger said that he would have to review the matter further. He then stated that he would have to look at what his office's regular time was and how much he could potentially pad.

¶ 14. L.R. ultimately filed a grievance with the OLR. After receiving a copy of the grievance and the transcript of the January 31, 2003, meeting, Attorney

Nussberger prepared a billing statement for his work on the estate. The statement showed a total of 29 hours of work, which would have equaled a total fee of $3625. The statement, however, indicated that Attorney Nussberger would honor his agreement to accept $2500 in full payment of his fees. There is no claim that the hours set forth on Attorney Nussberger's statement were not legitimate.

¶ 15. Based on these factual findings, the referee concluded that Attorney Nussberger had improperly suggested to L.R. that she could fraudulently obtain estate funds by Attorney Nussberger submitting an inflated invoice. The referee concluded that, by making this suggestion, Attorney Nussberger had counseled a client to engage in conduct that he knew to be criminal or fraudulent, in violation of SCR 20:1.2(d).

¶ 16. With respect to the appropriate level of discipline, the referee noted that there were a number of both aggravating and mitigating factors.

¶ 17. On the aggravating side, the referee found that Attorney Nussberger had been previously publicly reprimanded for engaging in conduct on multiple occasions that involved dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c). This prior conduct was similar in nature to the conduct found in the present proceeding. Moreover, Attorney Nussberger's meetings with L.R. occurred at a time when he was involved in the prior disciplinary investigation, which should have increased his resolve to avoid engaging in or suggesting illegal activity. In addition, Attorney Nussberger's suggestion of inflating his invoice and splitting the extra money with the client was based upon Attorney Nussberger's profit motive. Finally, the referee noted that Attorney Nussberger's conduct harms the public reputation of

lawyers, and in fact, had caused L.R. to hope that she never has to work with another attorney.

¶ 18. On the mitigating side, the referee stated that, although Attorney Nussberger counseled L.R. to engage in fraudulent or criminal conduct, neither he nor his client took any action on that advice and no one lost any money. The referee further noted that he believes Attorney Nussberger has demonstrated true remorse for his actions and has cooperated in the investigation, even to the point of pleading no contest. The referee also pointed to the fact that Attorney Nussberger has served, with competence and professionalism, as a family court commissioner. Finally, the referee stated that Attorney Nussberger's actual bill for his work on the mother's estate was reasonable.

¶ 19. The referee ultimately concluded that a suspension was appropriate due primarily to the fact that Attorney Nussberger had discussed his plan with L.R. on two occasions. Had he withdrawn his advice as inappropriate at the second meeting, the referee stated that he probably would have recommended a public reprimand. However, giving the same advice the second time reflected a dishonest motive, rather than a mistake or an off-the-cuff comment that was not adequately considered.

¶ 20. On appeal, Attorney Nussberger argues that, since his suggested course of action was not carried out, there was no harm to the client or any other individual and thus, a 60–day suspension would be too severe. Although Attorney Nussberger stipulated to the facts found by the referee and stated at oral argument that he was not challenging the referee's findings of fact, his brief and oral argument attempt to recast what had occurred. He asserts that he never intended to keep

any of the extra money and was simply attempting to help a "financially disadvantaged client" obtain more money out of her mother's estate because "nothing of significance would have otherwise come out of the estate." Thus, he asserts that "[h]is punishment should be a reprimand because his bad acts had an inherent, moral good."

¶ 21. Attorney Nussberger also attempts to characterize the situation as one in which he was "shooting from the hip" and attempting to give on-the-spot answers to quick questions from a client so as to "appease" the client. Attorney Nussberger asserts that he is now more careful to reduce his words to paper so that he can make sure they are proper.

¶ 22. The facts, as stipulated by Attorney Nussberger, do not correspond with the arguments he makes on appeal from the referee's report and recommendation. The complaint, which Attorney Nussberger stipulated the referee could use as the factual basis for his no-contest plea, explicitly states that Attorney Nussberger raised the concept of inflating his bill in two meetings on two separate occasions, over a month apart. Indeed, paragraph seven of the complaint states that at the first meeting in December 2002 Attorney Nussberger told L.R. that he could submit a billing statement that was higher than the actual fees and split the extra money with her. Moreover, at the disciplinary hearing, L.R. specifically testified that she had reviewed the allegations of the complaint and that she considered the complaint to be accurate.

¶ 23. These facts support the referee's finding that Attorney Nussberger was the one who initiated this scheme and that he did so, at least to some degree, out of a profit motive. The facts also demonstrate that this was not an inadvertent, one-time remark made in

response to a client who demanded an instant answer. Attorney Nussberger had a whole month to reconsider his suggestion, but chose to repeat the idea of submitting an inflated bill. Moreover, Attorney Nussberger's claim that he was simply trying to help a financially disadvantaged client is undercut by the fact that L.R. is a health care professional and a middle manager at a health care facility.

¶ 24. While there ultimately may have been no financial harm to L.R. or to the State because Attorney Nussberger's plan was never completed, that does not mean that there was no harm caused by his conduct. L.R. testified that the situation had caused her an immense amount of stress, had adversely impacted her trust for attorneys, and had led her to hope that she never needed to retain another attorney. In addition to the harm to the client, his conduct also certainly harms the reputation of the profession generally.

■

¶ 25. After reviewing the record and the briefs, we conclude that the referee's factual findings are amply supported by the record, including Attorney Nussberger's stipulation and no-contest plea, and we adopt them. We also adopt the referee's conclusion that Attorney Nussberger's conduct constituted counseling a client to engage in conduct that he knew was criminal or fraudulent, in violation of SCR 20:1.2(d).

■

¶ 26. With respect to the appropriate level of discipline, the parties have not cited any factually similar cases involving a single violation of SCR 20:1.2(d). We conclude that under the facts of this case, a 60–day suspension is required by the serious nature of the misconduct. Attorney Nussberger counseled a client to engage in activity that, if completed, could have

resulted in criminal charges. This is not a case where the attorney was faced with responding to a client that wished to skirt the edge of the law. Rather, it was Attorney Nussberger who initiated the scheme. A reprimand, whether public or private, would unduly depreciate the seriousness of such misconduct.

¶ 27. Moreover, in disciplinary proceedings we have frequently followed the concept of progressive discipline, especially in cases involving a pattern of similar misconduct. *See, e.g., In re Disciplinary Proceedings Against Converse,* 2006 WI 45, ¶ 37, 287 Wis. 2d 72, 707 N.W.2d 530; *In re Disciplinary Proceedings Against Guzikowski,* 143 Wis. 2d 60, 61, 420 N.W.2d 368 (1988). Moreover, we have imposed progressive discipline when the conduct at issue in the current disciplinary proceeding occurred prior to the imposition of discipline in a prior proceeding. *See, e.g., In re Disciplinary Proceedings Against Ray,* 2004 WI 45, ¶¶ 4, 22, 270 Wis. 2d 651, 678 N.W.2d 246.

¶ 28. As the OLR notes, this is not the first time that Attorney Nussberger has been disciplined for conduct demonstrating dishonesty. At the time of the January 31, 2003, meeting with L.R. in this case, Attorney Nussberger was in the process of finalizing the agreement for the imposition of a public reprimand on the earlier grievances. As noted above, those grievances related to misrepresentations that Attorney Nussberger made to the SPD relating to the completion of his representation of indigent criminal defendants that allowed him to obtain payment before he was entitled to do so. Despite the fact that he was negotiating a public reprimand at the time, Attorney Nussberger nonetheless proceeded on two separate occasions

57

with his improper suggestion to L.R. This fact confirms the need for a sanction stronger than another reprimand in the present case.

¶ 29. Finally, we address Attorney Nussberger's objection to the statement of costs submitted by the OLR. Although Attorney Nussberger acknowledges that this court's general practice has been to assess the full costs of a disciplinary proceeding against the attorney being disciplined, he argues that the OLR's costs are excessive and unreasonable as a matter of law.

¶ 30. Attorney Nussberger claims that the statement of costs submitted by the OLR does not adequately explain the hours expended by the OLR staff in prosecuting this case. Therefore, he requests that the OLR's cost request be denied in its entirety.

¶ 31. Alternatively, Attorney Nussberger asserts that, given his stipulation to the underlying facts and the conclusion of professional misconduct, the OLR's total counsel fees and disbursements of $4386.98 ($2718.20 pre-appellate costs and $1668.78 appellate costs) are excessive. He asserts that the OLR should have spent no more than ten hours through the time of the referee's report and only four hours on appeal for both writing the appellate brief and participating in oral argument. Thus, he claims that the OLR should have incurred counsel fees of no more than $840. He also states that he would consider total disbursements of no more than $310 to be reasonable.[2]

---

[2] Attorney Nussberger also makes a passing argument that imposing costs on an attorney who appeals a sanction recommendation in good faith is unconstitutional. He cites no case law in support of this assertion and does not develop it adequately to allow a response. Thus, we will not address the

¶ 32. In response, the OLR points out that Attorney Nussberger contested the complaint until two months prior to the scheduled trial date. Only then did he stipulate to the underlying facts and plead no contest to violating SCR 20:1.2(d). Even after the stipulation, Attorney Nussberger continued to contest the level of discipline to be imposed, which required an in-person evidentiary hearing and a subsequent telephonic evidentiary hearing. It also required the preparation of post-hearing briefs on the sanction issue. The OLR also notes that its letters to Attorney Nussberger's counsel transmitting its initial and supplemental statements of costs offered to provide a detailed itemization of the costs to Attorney Nussberger, but he never requested any such breakdown. In any event, in response to Attorney Nussberger's objection, the OLR has submitted an itemization of the time and disbursements it expended on this case.

¶ 33. After reviewing the briefs and the OLR's documentation, we conclude that the costs submitted by the OLR, which, as of May 11, 2006, totaled $6056.62 through oral argument, are reasonable under the circumstances of this case. It should be noted that $1669.64 of the total costs relate to the referee's fee and the court reporters' charges. Attorney Nussberger's alternative cost proposal recognizes that such costs are reasonable and properly charged to him. In addition, given the nature of the proceedings before the referee and the fact that there was a full appeal with oral argument, we believe that the OLR's counsel fees and disbursements of $4386.98 are justified. We conclude

issue. *See Wisconsin Prof'l Police Ass'n, Inc. v. Lightbourn,* 2001 WI 59, ¶ 233, 243 Wis. 2d 512, 627 N.W.2d 807.

that Attorney Nussberger's conduct necessitated the present disciplinary proceeding and that he should therefore bear the full costs of this proceeding.

¶ 34. IT IS ORDERED that the license of Attorney Terry L. Nussberger to practice law in Wisconsin is suspended for a period of 60 days, effective September 11, 2006.

¶ 35. IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Nussberger shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay those costs within that time, the license of Attorney Nussberger to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 36. IT IS FURTHER ORDERED that if he has not already done so, Attorney Nussberger shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.