# Supreme Court of Wisconsin

| | |
|---|---|
| Case No.: | 2020AP2166-D |

| | |
|---|---|
| Complete Title: | In the Matter of Disciplinary Proceedings Against Matthew T. Luening, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>      Complainant,<br>    v.<br>Matthew T. Luening,<br>      Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST LUENING

| | |
|---|---|
| Opinion Filed: | December 15, 2023 |
| Submitted on Briefs: | |
| Oral Argument: | |

| | |
|---|---|
| Source of Appeal: | |
|   Court: | |
|   County: | |
|   Judge: | |

| | |
|---|---|
| Justices: | |

Per curiam.

| | |
|---|---|
| Attorneys: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP2166-D

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Matthew T. Luening, Attorney at Law:**

**Office of Lawyer Regulation,**

Complainant,

v.

**Matthew T. Luening,**

Respondent.

**FILED**

**DEC 15, 2023**

Samuel A. Christensen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. This matter returns to the court following remand to Referee James J. Winiarski.

¶2 Attorney Matthew Luening was admitted to practice law in Wisconsin in 2010 and practices in Milwaukee. His disciplinary history consists of two consensual public

reprimands.  Public Reprimand of Matthew T. Luening, No. 2017-3;[1] Public Reprimand of Matthew T. Luening, No. 2017-10.[2]

¶3  On December 29, 2020, the Office of Lawyer Regulation (OLR) filed a complaint against Attorney Luening, alleging twelve counts of misconduct.  Seven of those counts arose out of Attorney Luening's practice before an immigration tribunal.  Attorney Winiarski was appointed referee.  During the pendency of the case, the referee granted summary judgment in favor of OLR on one count of misconduct, and OLR dismissed one count.  Following an evidentiary hearing, the referee issued a report finding that OLR met its burden of proof with respect to six of the counts of misconduct alleged in the complaint, including three of the immigration-based counts.  The referee recommended a six-month suspension of Attorney Luening's license to practice law.

¶4  Attorney Luening appealed, arguing that a six-month suspension was excessive.  The OLR cross-appealed, arguing that the referee erred in finding that OLR failed to meet its burden of proof on one of the alleged counts of misconduct and that a six- month suspension was inadequate.

¶5  In advance of oral argument, the court learned that on the same day it filed the complaint against Attorney Luening,

---

[1] Electronic copy available at https://compendium.wicourts.gov/app/6a7e2925573043408b558b4b0a75 2f7f6b1d1933.continue?action=detail&detailOffset=1.

[2] Electronic copy available at https://compendium.wicourts.gov/app/6a7e2925573043408b558b4b0a75 2f7f6b1d1933.continue?action=detail&detailOffset=0.

OLR filed a complaint in another case involving an attorney's immigration practice. The complaint filed in the other case cited both the Wisconsin Rules of Professional Conduct alleged to have been violated as well as the rules promulgated by the Executive Office of Immigration Review (EOIR), as set forth in 8 C.F.R. § 1003.102.

¶6 On February 24, 2023, we ordered the first seven counts alleged in the complaint in this proceeding, all of which arose out of Attorney Luening's representation of clients before an immigration tribunal, dismissed because those counts should have been pleaded under the rules promulgated by EOIR rather than under Wisconsin's Rules of Professional Conduct. We remanded the matter to the referee for a recommendation on the appropriate sanction for the remaining non-immigration related counts of misconduct found by the referee. See In re Disciplinary Proceedings Against Luening, 2023 WI 12, 406 Wis. 2d 1, 985 N.W.2d 773. (Luening I).

¶7 On remand, the referee asked the parties to file briefs on the sanction issue. Both parties advocated for a suspension not to exceed 60 days. On May 10, 2023, the referee issued a Report Following Remand in which he concluded that a 60-day suspension of Attorney Luening's license to practice law in Wisconsin would be an appropriate sanction for the remaining counts of misconduct. The referee also recommended that Attorney Luening should be responsible for 25% of the costs in this case, which would be $8,639.22.

3

¶8 Since no appeal was filed from the Referee's Report Following Remand, we review the report pursuant to Supreme Court Rule (SCR) 22.17(2).[3] After careful review of the matter, and noting the unique circumstances of this case, we agree that Attorney Luening's non-immigration related misconduct warrants a 60-day suspension. We also agree that Attorney Luening should be assessed 25% of the costs of this proceeding.

¶9 Three of the non-immigration based counts of misconduct alleged in OLR's complaint arose out of Attorney Luening's representation of L.S. L.S. is from Kenya but has spent considerable time in the Milwaukee area. In 2013, L.S. was living in the Milwaukee area with her husband. She had previously used Attorney Luening's legal services in efforts to secure a green card for her son. As a result of that representation, Attorney Luening and L.S. became close friends.

¶10 L.S. and her husband returned to Kenya in 2013. L.S.'s husband was in the military. He passed away while the couple was in Kenya, and L.S. applied for military benefits as a result of his death. When L.S. ran into problems securing the benefits, she asked Attorney Luening, who was in Milwaukee, for help. Attorney Luening and L.S. communicated via Skype, email, and written correspondence. Attorney Luening agreed to help

---

[3] SCR 22.17(2) provides: "If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter."

4

L.S. obtain the military benefits. There was no discussion of legal fees and no written fee contract. Attorney Luening said he had no intention of charging his friend for his help.

¶11 In order to secure the military death benefits, L.S. executed a Wisconsin General Durable Power of Attorney on October 25, 2016 while she was in Kenya. The power of attorney was a general grant of many powers to the named agent, Attorney Luening, and it gave Attorney Luening powers over L.S.'s banking and other financial transactions. The power of attorney also included powers to resolve the military benefits issue.

¶12 In his communications with authorities while attempting to secure military benefits for L.S., Attorney Luening referred to L.S. as his client.

¶13 In March 2018, Attorney Luening received notice that L.S. would receive the death benefits. In a March 18, 2018 letter to L.S., Attorney Luening said he was happy they were able to deal successfully with the military. He also said, "My representation as your attorney is now ended, as I see it."

¶14 In April 2018, L.S. sent Attorney Luening a check for $3,000 accompanied by a note in which L.S. said the money was to thank Attorney Luening for helping her with the military benefits issue. Attorney Luening sent L.S. a handwritten letter that month in which he discussed his financial problems. In a May 4, 2018 letter to Attorney Luening, L.S. said:

> I received your mssge (sic) and note Babe. I can help you. I can lend you $25,000 if you need it. You can deposit payments when I come over.

5

¶15 No further communication occurred between L.S. and Attorney Luening about a loan agreement or about the terms of a loan such as the type of disbursement that would be made or the repayment of interest.

¶16 In June 2018, using the power of attorney L.S. had signed, Attorney Luening began making electronic withdrawals from L.S.'s checking account and transferring the funds to his bank account for his own personal use. He did not provide L.S. notice of the electronic withdrawals.

¶17 Between June 28, 2018 and January 2, 2019, Attorney Luening stated that he made thirteen withdrawals totaling $23,600. L.S. said the number and total amounts of the withdrawals was greater.

¶18 L.S. returned to Milwaukee from Kenya in February 2019. Between January 28, 2019 and February 8, 2019, Attorney Luening withdrew an additional $7,200 from L.S.'s checking account to cover the expense of her hotels, food, security deposit at her Milwaukee apartment, cell phone, and for expenses Attorney Luening and his staff incurred taking L.S. shopping, looking for apartments, taking her to visit friends in town, and making trips back and forth to his office. L.S. knew and approved of those withdrawals.

¶19 On or about February 22, 2019, L.S. paid Attorney Luening $10,000 in attorney's fees for his representation in the military benefits matter. Attorney Luening did not provide L.S. with any billing statements for his work in representing her in that matter.

6

¶20 Beginning in June 2019, Attorney Luening began making payments, via electronic deposits and cashier's checks, to L.S. as repayment for the purported loan.  As of March 10, 2020, Attorney Luening had repaid L.S. $33,000.  Attorney Luening considered the purported loan amount to be $23,600 and interest to be $9,400.

¶21 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Luening's dealings with L.S.:

> Count 8:  By failing to communicate to [L.S.] in writing the scope of his representation or the basis or rate of his fee or expenses for which [L.S.] would be responsible, [Attorney] Luening violated SCR 20:1.5(b)(1).[4]
>
> Count 9:  Having formerly represented [L.S.], by using his knowledge of [L.S.]'s funds in the . . . checking account to the disadvantage of [L.S.], [Attorney] Luening violated SCR 20:1.9(c)(1).[5]

---

[4] SCR  20:1.5(b)(1)  provides:    "The  scope  of  the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate as in the past. If it is reasonably foreseeable that the total cost of representation to the client, including attorney's fees, will be $1000 or less, the communication may be oral or in writing. Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client."

[5] SCR 20:1.9(c)(1) provides:  "A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client, or when the information has become generally known."

Count 10: By misappropriating [L.S.]'s funds for his own personal use, [Attorney] Luening violated SCR 20:8.4(c).[6]

¶22 The last two non-immigration related counts alleged in OLR's complaint arose out of Attorney Luening's practicing law while his license was suspended.

¶23 On April 5, 2019, the Wisconsin Board of Bar Examiners (BBE) sent a Notice of Noncompliance to Attorney Luening advising him that he had until June 4, 2019 to complete his 2017-2018 mandatory continuing legal education (CLE) requirements and informing him that if he did not become compliant, his law license would be automatically suspended on June 5, 2019. The notice also stated that the CLE report and any unpaid late fee must be received no later than June 4, 2019 in order for him to remain eligible to practice law in Wisconsin.

¶24 Attorney Luening acknowledged that he received notice prior to June 5, 2019. Although he timely obtained the necessary CLE credits and filed a CLE report showing compliance, he failed to pay the late fee by June 4, 2019.

¶25 On June 5, 2019, BBE suspended Attorney Luening's Wisconsin law license for noncompliance with the 2017-2018 mandatory CLE requirements because the late fee had not been paid. The BBE sent a memorandum to the clerk of this court and all judges of courts of record in Wisconsin listing the

---

[6] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

8

attorneys who were suspended as of that date for failure to comply with CLE requirements. Attorney Luening's name was on the list. The BBE also mailed Attorney Luening a notice on that date informing him that his law license had been suspended.

¶26 Due to the suspension of his Wisconsin law license, Attorney Luening was not eligible to practice in any United States immigration court, per 8 C.F.R. § 1292.1. Attorney Luening continued to practice law and represent clients on June 5, 6, and 7, primarily in criminal and immigration matters, including appearing in court and by phone, as well as filing motions. He did not inform any of the courts presiding over those matters of his suspension.

¶27 When Attorney Luening learned that he had failed to pay the late fee, he stopped practicing law and took immediate action to remedy the situation. On June 10, 2019, Attorney Luening filed a petition for reinstatement with BBE in which he reported compliance with the 2017-2018 mandatory CLE requirements, identified the instances in which he had practiced law during the period of suspension, and verified that he had paid the $200 reinstatement fee.

¶28 On June 10, 2019, Attorney Luening's license to practice law was reinstated.

¶29 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Luening's practice of law while suspended:

> Count 11: By appearing on behalf of clients and filing motions on behalf of clients in circuit court

9

while subject to a CLE suspension, [Attorney] Luening violated SCR 31.10(1)[7] and SCR 22.26(2)[8], enforceable via SCR 20:8.4(f).[9]

Count 12:   By appearing on behalf of clients in immigration court while he was not eligible to practice law in immigration court, [Attorney] Luening violated SCR 20:5.5(a)(1).[10]

---

[7] SCR 31.10(1) provides:  "If a lawyer fails to comply with the attendance requirement of SCR 31.02, fails to comply with the reporting requirement of SCR 31.03(1), or fails to pay the late fee under SCR 31.03(2), the board shall serve a notice of noncompliance on the lawyer. This notice shall advise the lawyer that the lawyer's state bar membership shall be automatically suspended for failing to file evidence of compliance or to pay the late fee within 60 days after service of the notice. The board shall certify the names of all lawyers so suspended under this rule to the clerk of the supreme court, all supreme court justices, all court of appeals and circuit court judges, all circuit court commissioners appointed under SCR 75.02(1) in this state, all circuit court clerks, all juvenile court clerks, all registers in probate, the executive director of the state bar of Wisconsin, the Wisconsin State Public Defender's Office, and the clerks of the federal district courts in Wisconsin. A lawyer shall not engage in the practice of law in Wisconsin while his or her state bar membership is suspended under this rule."

[8] SCR 22.26(2) provides:  "An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the practice of law or in any law work activity customarily done by law students, law clerks, or other paralegal personnel, except that the attorney may engage in law related work in this state for a commercial employer itself not engaged in the practice of law."

[9] SCR 20:8.4(f) provides:  "It is professional misconduct for a lawyer to violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[10] SCR 5.5(a)(1) provides:  "A lawyer shall not practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction except that a lawyer admitted to practice in Wisconsin does not violate this rule by conduct in another jurisdiction that is permitted in Wisconsin under SCR 20:5.5 (c) and (d) for lawyers not admitted in Wisconsin."

¶30  OLR dismissed Count 12 during the pendency of this action.

¶31  In his Report Following Remand, the referee found that OLR had met its burden of proof as to Counts 8, 10, and 11 of the complaint.

¶32  With respect to the counts relating to L.S., the referee noted that Attorney Luening was successful in securing military benefits for L.S.  The referee also noted that in the letter Attorney Luening wrote to L.S. confirming that successful outcome, Attorney Luening made no request for any legal fees. The referee said, "Much later, and upon her return from Kenya to Milwaukee in 2019, [L.S.] voluntarily gave [Attorney] Luening a $10,000 payment.  There was no bill issued by [Attorney] Luening in relation to the $10,000 payment and it apparently was an amount [L.S.] came up with on her own to show her appreciation for [Attorney] Luening's services."  The referee went on to say:

> Count 8 of the complaint alleges that [Attorney] Luening failed to communicate to [L.S.] in writing the scope of his representation or the basis or the rate for his fee.  Despite the fact that [Attorney] Luening never had any intention of charging his friend for his legal services, [Attorney] Luening was a lawyer and did perform legal services for [L.S.] without any discussion or written agreement in relation to the cost of his legal services.  There should have been some discussion or writing between [Attorney] Luening and [L.S.] in relation to the cost of such legal services.  If [Attorney] Luening did not intend to charge her anything for his legal services, that should have been conveyed to [L.S.] at the beginning of the representation.  While I find [Attorney] Luening's gratuitous thinking in relation to his close friend, [L.S.], to be a friendship gesture, as a lawyer, he was still required to convey intended

11

charges or lack thereof to [L.S.] His failure to do so is a violation of SCR 20:1.5(b)(1). His gratuitous and friendship goals are more of a mitigating factor to be considered by me in recommending appropriate discipline for this violation of the rules.

¶33 In finding that OLR failed to meet its burden of proof with respect to Count 9 of the complaint, the referee said that the evidence showed that L.S. "knew perfectly well that the power of attorney allowed [Attorney] Luening access to her [bank] account and she benefitted from his continuing access to her accounts." The referee said L.S. testified at the evidentiary hearing that she thought the proceeds from the military benefits claim were being deposited into her bank accounts; she thought additional benefits were due her; the power of attorney she gave to Attorney Luening was not only to obtain the military benefits but also to have him help her with the military benefits after they were deposited into her accounts; and she never revoked the power of attorney. The referee also noted that L.S. testified that she never arranged for her bank statements to be forwarded to her in Kenya; she knew the statements were being sent to her old address in Milwaukee; and she had no way to access her bank account other than through Attorney Luening.

¶34 The referee rejected OLR's claim that Attorney Luening used his knowledge of L.S.'s bank accounts as a result of "formerly" representing her in obtaining the military benefits. Rather, the referee said:

The representation of [L.S.] by [Attorney] Luening and the use of the power of attorney was continuous at

12

[L.S.]'s directions to [Attorney] Luening. [L.S.] knew that [Attorney] Luening continued to have the power of attorney and she made use of the power by directing [Attorney] Luening to conduct certain transactions with the [bank] accounts. [L.S.] knew she had given [Attorney] Luening the general durable power of attorney and that it remained in effect even after some of the military benefits had been received as a result of [Attorney] Luening's efforts. . . . [L.S.] benefitted from and directed further use of the power of attorney by [Attorney] Luening.

¶35 The referee found that the evidence showed a close personal relationship between L.S. and Attorney Luening while she was residing in Kenya, with considerable communications of a personal nature. The referee said after Attorney Luening indicated he was experiencing financial problems, L.S. responded, "I can help you. I can lend you $25,000 if you need it. You can deposit payments when I come over." The referee found Attorney Luening's testimony that he believed L.S. was offering him a loan up to $25,000 that he could repay when she returned to Milwaukee a plausible interpretation of L.S.'s statement to him. By contrast, the referee said the language of the communication did not support L.S.'s claim that she meant she would consider making a loan to Attorney Luening when she returned to Milwaukee. The referee said although L.S. claimed she did not have any money to make the loan when she sent her communication to Attorney Luening, "She knew the military death benefits were going into her [bank] accounts" and "she knew perfectly well that she had given [Attorney Luening] a power of attorney that gave him access to the . . . accounts." The referee also said, "While there is some nominal disputes as to

13

the exact amounts removed by [Attorney] Luening from [L.S.]'s accounts, all of the money removed has been returned by [Attorney] Luening to [L.S.] and OLR does not claim . . . any additional amount is still owed by [Attorney] Luening in relation to the loans."

¶36 The referee found that OLR met its burden of proof with respect to Count 10 of the complaint, and he found that Attorney Luening did violate SCR 20:8.4(c) by removing money from L.S.'s accounts.  However, the referee rejected OLR's contention that Attorney Luening planned to use L.S.'s power of attorney to "misappropriate" her funds. The referee said:

> [Attorney] Luening did not make gifts to himself using the power of attorney.  He made loan payments to himself which he believed [L.S.] had offered to him. There is no evidence that [Attorney] Luening ever suggested the loan amounts were gifts. . . .
>
> [L.S.] was a nurse and thus highly educated. . . . While I have found [Attorney] Luening, as a lawyer, should have further clarified the loan offer from a client, [L.S.] needs to take responsibility for the language she used.  Also, her claim that she did not realize [Attorney] Luening had the ability to transfer money from her account lacks credibility, given that she was the one who actually gave such power to him in the power of attorney she prepared and signed.

¶37 Finally, with respect to Attorney Luening's practicing law while suspended, the referee noted that he had previously granted OLR's motion for summary judgment on Count 11, and the referee described Attorney Luening's failure to pay the late fees to BBE "an oversight . . . and not a deliberate act of defiance."

14

¶38 Turning to the appropriate level of discipline for the three counts of misconduct, the referee noted that courts should consider:  (1) the duty violated; (2) the lawyer's mental state; (3) the potential or actual injury caused by the lawyer's conduct; and (4) the existence of aggravating or mitigating factors.  In re Disciplinary Proceedings Against Grogan, 2011 WI 7, ¶15 n.9, 331 Wis. 2d 341, 795 N.W.2d 745 (recognizing the ABA Standards for Imposing Lawyer Sanctions, as amended in 1992, as a guidepost).

¶39 The referee noted that Attorney Luening's two public reprimands did not adequately demonstrate to Attorney Luening the need to scrupulously comply with Supreme Court Rules.  The referee also noted that this court has recognized the need for progressive discipline in attorney disciplinary cases.  In re Disciplinary Proceedings Against Nussberger, 2006 WI 111, ¶27, 296 Wis. 2d 47, 719 N.W.2d 501.

¶40 With respect to the two counts involving L.S., the referee said Attorney Luening believed L.S. was offering him a loan of up to $25,000, and although he should have clarified and documented the loan offer, Attorney Luening did not outright steal L.S.'s money.  The referee said:

> [Attorney Luening] was fully aware that [L.S.] would learn of the loans upon her return to Milwaukee. Also, he actually arranged for bank statements to be sent to her upon her return to Milwaukee. He did not try to hide the loan amounts he received. He repaid the loans and he claims with interest. While the evidence in regard to the repayments of the loans was not clear, OLR does not argue in its post-hearing briefs that any amount remains due. Nonetheless,

15

[Attorney] Luening should have known that he needed to confirm [L.S.]'s willingness to make the loan and he should have kept her inform[ed] of the amounts he was taking from her account. In essence, both [L.S.] and [Attorney] Luening were sloppy in how both of them approached the loan. However, [Attorney] Luening was the professional attorney who should have realized the need to further document the situation.

¶41 The referee went on to say:

While I have found that [Attorney] Luening should have had a fee agreement or at least something in writing when he began helping [L.S.] obtain the military benefits due her as a result of her husband's death, it is clear from the evidence that [Attorney] Luening did not intend to charge her anything for his legal services. While OLR suggests in their briefs some sort of evil motive and intent to ultimately charge [L.S.] for the services, I did not find anything of the sort in the evidence. . . . I do not see this as a classic case where a lawyer simply did not provide a fee contract to a client. . . . There certainly are mitigating circumstances to be taken into account in both the fee contract and loan counts.

¶42 The referee concluded that a 60-day suspension was an appropriate sanction for Attorney Luening's misconduct.

¶43 As to the assessment of costs, the referee noted that this court's general policy is to impose all costs upon a finding of misconduct. SCR 22.24(1m). The referee noted that OLR's complaint alleged twelve counts of misconduct, while the referee was tasked with recommending an appropriate sanction for only three of those counts. The referee noted that SCR 22.24(1m) sets forth the factors to be considered in assessing costs. The referee said:

I believe the two most important factors in relation to the assessment of costs in this case are that [Attorney] Luening has previously received two public reprimands, each involving multiple violations.

16

> However, I cannot ignore the fact that the respondent has only been found responsible on three of twelve counts. Seven of the original 12 counts were improperly charged. While mathematical equality is not always required, I believe the respondent should be responsible for 25% of the costs in this case.

¶44 This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendations. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶45 We adopt the referee's findings of fact and conclusions of law and find that Attorney Luening violated the Supreme Court Rules as alleged in Counts 8, 10, and 11 of the complaint. After careful consideration, we also agree with the referee that a 60-day suspension of Attorney Luening's license to practice law in Wisconsin is an appropriate sanction for his misconduct, and we agree with the referee's recommendation on the imposition of costs.

¶46 We frequently say that since no two disciplinary cases are precisely the same, there is no standard sanction for any particular misconduct. We find, however, that the counts of misconduct found by the referee in this case are somewhat similar to the misconduct at issue in In re Disciplinary Proceedings Against Toran, 2018 WI 26, 380 Wis. 2d 531, 909

17

N.W.2d 411 and <u>In re Disciplinary Proceedings Against Bartz</u>, 2015 WI 61, 362 Wis. 2d 752, 864 N.W.2d 881.

¶47 In <u>Bartz</u>, we imposed a 60-day suspension for five counts of professional misconduct that included a violation of SCR 20:8.4(c) that was more egregious than the violation that occurred in the instant case since Attorney Bartz, after settling a personal injury claim, disbursed monies held in trust to himself, leaving no funds in trust attributable to his client or the client's medical provider. Attorney Bartz's disciplinary history consisted of a consensual private reprimand. In <u>Toran</u>, we imposed a 60-day suspension for three counts of misconduct that included failing to enter into a written fee agreement with a client and failing to return an advanced payment of fees when the attorney did not complete the work for which he was retained. Attorney Toran's disciplinary history consisted of two consensual public reprimands, a consensual private reprimand, and a six-month suspension.

¶48 Here, the referee found Attorney Luening's failure to pay the late fee associated with his lack of timely compliance with mandatory CLE requirements to be an oversight. Although Attorney Luening practiced law for several days after his law license was suspended, as soon as he learned he had not paid the late fee, he ceased practicing law and took immediate steps to correct his error. Although his practice of law during those few days is a violation of the rules of professional misconduct, standing alone it would not warrant a license suspension.

18

¶49 Attorney Luening's misconduct related to L.S. is obviously more serious. Even if Attorney Luening did not intend to charge his friend for assisting her in obtaining military benefits following the death of her husband, as an attorney he had the obligation to clearly communicate with L.S. regarding the issue of fees. The fact that Attorney Luening was successful in obtaining an award of the military benefits does not relieve him of his responsibilities under SCR 20:1.5(b)(1).

¶50 Attorney Luening's transfer of funds from L.S.'s bank account after she told him, "I can lend you $25,000 if you need it," is his most serious transgression. As the referee noted, Attorney Luening was serving as L.S.'s agent under the power of attorney and was acting as a fiduciary for her. As an attorney, he should have recognized the need to clarify the terms of the loan offer he believed she had made. It is significant, however, that the referee, who was in the best position to judge witness credibility, found Attorney Luening's testimony about the loan to be credible, and he found parts of L.S.'s testimony about the loan to be less than credible. We agree with the referee that while both L.S. and Attorney Luening were sloppy in how they approached the loan, as both an attorney and as L.S.'s fiduciary, Attorney Luening bore the responsibility of clarifying and documenting the terms of the loan before transferring any funds from L.S.'s account to his own.

¶51 The referee is correct that we generally adhere to the concept of progressive discipline. This is Attorney Luening's third disciplinary proceeding. The referee is also correct that

19

Attorney Luening's two previous public reprimands apparently did not impress upon him the need to strictly adhere to the rules of professional conduct. We concur with the referee's conclusion that a 60-day suspension of Attorney Luening's law license is an appropriate sanction.

¶52 We turn now to the issue of costs. The referee recommends that Attorney Luening be responsible for 25% of the costs. As the referee noted, upon a finding of misconduct, our general policy is to impose all costs of the proceeding upon the respondent. See SCR 22.24(1m). In appropriate cases, the court may, in the exercise of its discretion, reduce the amount of costs. In exercising its discretion regarding the assessment of costs, the court considers the statement of costs, any objection and reply, the recommendation of the referee, and (a) the number of counts charged, contested, and proven; (b) the nature of the misconduct; (c) the level of discipline sought by the parties and recommended by the referee; (d) the respondent's cooperation with the disciplinary process; (e) prior discipline, if any; and (f) other relevant circumstances. Id.

¶53 The pre-appellate costs of this proceeding, prior to October 24, 2022 when this court asked the parties to advise whether SCR 20:8.5(b)[11] required that the counts of misconduct

---

[11] SCR 20:8.5(b) provides: "Choice of law. In the exercise of the disciplinary authority of this state, the Rules of Professional Conduct to be applied shall be as follows:

(1) for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise; and

arising out of Attorney Luening's representation of clients before an immigration tribunal should have been pleaded under EOIR rules, are $34,556.88. In addition, OLR's appellate counsel fees are $4,207.00. Twelve counts of misconduct were charged in OLR's complaint. Three were proven. In their post-remand briefs, the parties agreed that a suspension not exceeding 60 days would be appropriate, and the referee agreed with their assessment. As noted, this is Attorney Luening's third disciplinary proceeding.

---

(2) for any other conduct,

(i) if the lawyer is admitted to the bar of only this state, the rules to be applied shall be the rules of this state.

(ii) if the lawyer is admitted to the bars of this state and another jurisdiction, the rules to be applied shall be the rules of the admitting jurisdiction in which the lawyer principally practices, except that if particular conduct clearly has its predominant effect in another jurisdiction in which the lawyer is admitted to the bar, the rules of that jurisdiction shall be applied to that conduct.

(iii) if the lawyer is admitted to the bar in another jurisdiction and is providing legal services in this state

(Continued)

as allowed under these rules, the rules to be applied shall be the rules of this state.

(c) A lawyer shall not be subject to discipline if the lawyer's conduct conforms to the rules of a jurisdiction in which the lawyer reasonably believes the predominant effect of the lawyer's conduct will occur."

¶54 Recognizing that its charging decisions resulted in substantial additional costs——as well as the dismissal of seven out of the originally pleaded twelve counts of misconduct——OLR urges the court to assess 50% of the pre-appellate costs against Attorney Luening. In support of its recommendation, OLR points to Attorney Luening's two previous public reprimands. It also asserts, "most of the work that OLR performed would have taken place regardless of the number of counts charged." OLR recommends that the court assess 50% of the costs incurred prior to October 24, 2022, or $17,278.44. For the period beginning October 24, 2022, OLR recommends that the court assess no costs since it concedes those amounts arose directly from the charging decision that this court held was improper.

¶55 Upon consideration of the factors set forth in SCR 22.24(1m), along with the unique circumstances of this case, we adopt the referee's recommendation to impose 25% of the pre-October 24, 2022 costs, or $8,639.22. Of the twelve counts of misconduct alleged in OLR's complaint, only three were proven. One count was dismissed by OLR, and this court dismissed the seven immigration-based counts due to OLR's failure to plead them under the rules promulgated by EOIR. If OLR's complaint had contained only the five counts unrelated to Attorney Luening's practice before an immigration tribunal, this proceeding would have been greatly simplified and the costs would likely have been a fraction of their actual amount. While the referee is correct that costs should not be assessed based on "mathematical equality," we conclude that requiring Attorney

22

Luening to pay 25% of the pre-October 24, 2022 costs would be equitable based on the unique circumstances presented here.

¶56 We note that while it may appear that by dismissing the seven counts of misconduct arising out of the representation of clients before an immigration tribunal and reducing the costs of the proceeding by 75%, Attorney Luening is getting off lightly, that is not the case. As we noted in Luening I, OLR's failure to plead the seven immigration-based counts of misconduct under EOIR rules, while simultaneously pleading immigration-based counts against another attorney under EOIR rules, threatened to undermine confidence in Wisconsin's attorney regulatory system given OLR's disparate treatment of two similarly situated attorneys. Luening I, 2023 WI 12, ¶20. We concluded that the appropriate remedy for OLR's decision not to prosecute Attorney Luening's immigration-based misconduct counts under EOIR rules was dismissal of those counts. Id., ¶22.

¶57 The suspension of an attorney's license to practice law, even for a brief period of time, is a significant sanction. The attorney is deprived of his livelihood during the period of suspension. He is required to notify all clients and courts before which he practices of the suspension. The court's order of suspension is published and may have an adverse impact on the attorney's ability to attract future clients. In short, a 60-day suspension is not a de minimus sanction, and we find it is the appropriate sanction under the unique facts of this case.

23

¶58 As to the 75% reduction in costs, since the vast majority of the costs incurred in this matter arose out of OLR's prosecution of, and Attorney Luening's vigorous defense against, the seven immigration-based counts of misconduct that this court dismissed, Attorney Luening should be relieved of having to pay the costs associated with OLR's significant error in pleading.

¶59 In closing, we note again that this is Attorney Luening's third disciplinary proceeding. We remind him that the court may impose progressively severe sanctions when an attorney engages in a pattern of misconduct. We impose the sanction recommended by the referee in this matter with the expectation that Attorney Luening will not commit future misconduct that would subject him to additional, potentially harsher, discipline.

¶60 IT IS ORDERED that the license of Matthew T. Luening to practice law in Wisconsin is suspended for a period of 60 days, effective January 26, 2024.

¶61 IT IS FURTHER ORDERED that within 60 days of the date of this order, Matthew T. Luening shall pay to the Office of Lawyer Regulation costs in the amount of $8,639.22.

¶62 IT IS FURTHER ORDERED that Matthew T. Luening shall comply with the requirements of SCR 22.26 pertaining to the duties of a person whose license to practice law in Wisconsin has been suspended.